Paul Boyle v. City of Pell City Appellant Paul Boyle v. City of Pell City Judy Tipton, the Director of HR, signed the 2005 agreement assigning Mr. Boyle to the foreman position. But it was temporary. It said he's going to be acting and it expired on a certain date. And again, we'd be in a whole different ballgame here if officially, you know, he had been foreman, and really he'd been foreman. And suddenly they come in one day and say, you know what, we're firing you as foreman. You've got to go do a job you can't do because you've got a bad back. But the city didn't do that. Under the 2005 agreement, Your Honors, Judy Tipton, the Director of HR, signed that agreement assigning Mr. Boyle to the street foreman position. That contract states that in order for Mr. Boyle to be removed from the street foreman position, he was to be given written notice. And the contract specifically shows he will be the foreman. We will give him written notice if we remove him from that position and assign him back to heavy equipment. So that contract in itself shows the city's intent that he was foreman. The undisputed evidence is that Mr. Boyle If he was foreman, why was Crowe still listed to the whole world to see the Mayor, City Council as foreman and getting more money for foreman? And your client was still, why not just officially do it the way everybody else does it, change his title? Why didn't they in 2001 when he stopped performing heavy equipment operator duties?  But what I can say is, fixing a paperwork error does not rise to the level of showing an undue burden. The city failed to show But the contract, the letter or whatever, the document that you're talking about, what does it say about two years? It said that they would renegotiate his salary if he was doing well in that position. After two years, they would Did they do that? Excuse me, Your Honor? Did they do that? No, Your Honor, they did not. They continued to pay him for the heavy equipment operator rate. And he continued to be foreman? Yes, Your Honor. Yes, Your Honor. He was foreman for over seven years. He was the only street department foreman and he performed every street department foreman duty. Apparently, he was just very fortunate that Martin and Crowe were willing to do that. Well, it was Mr. Crowe's determination of moving out of the department had nothing to do with Mr. Boyle. He wanted to go back to the shop as a mechanic. And when he did, that's when Mr. Martin thought, hmm, I have a vacancy here. I could accommodate Paul. Let's put him in this position for two years and see how he does. And if he does well, we'll renegotiate his salary in two years. Well, guess what? They didn't do that? They didn't do that. And he performed exceptionally for over seven years. What did he do about renegotiating? Well, Mr. Martin, he would talk to Mr. Martin about it. Mr. Martin went to the mayor. Mr. Martin went to the city council. He advised them we need to renegotiate his salary over the course of that seven years. It was never done. Not because Mr. Crowe was drawing the salary. Excuse me, Your Honor? Because Mr. Crowe was drawing the salary. Sure. And if the city wanted to continue paying him the foreman rate while he's performing a mechanic job, that's its prerogative. It should have paid Mr. Boyle the correct wage for the job he was actually performing. But Mr. Boyle must have been immensely grateful, though, because but for this accommodation by Mr. Martin, who obviously liked and thought well of Mr. Boyle, once he couldn't do the heavy lifting job, the heavy machinery job, he could have been let go. So I'm sure he was not going to complain. He's grateful to get a paycheck, even though he could have been fired. He certainly wasn't. He wanted to continue working for the city of Pell City. It sounds like gossip comes in, and this is bizarre how this is going. He says, what the heck, this is no way to run a railroad. You know, the guy that's doing the foreman job ought to be the guy with the title ought to be the guy doing it, Crowe. So he wants things to go in a more organized and normal fashion. What is he supposed to do with Crowe now? You're saying essentially they should say your client gets to be foreman. Is Crowe now out? Crowe gets fired? I believe they should have been paying the employees for the jobs. Forget that part. What are we supposed to do? Gossip comes in, and you say my client's sort of like latches or adverse possession. He's been there. You can't, you've got to let him keep the job. What do you do with Crowe? Still in the mechanics department at the time. Now, for over seven years, when Mr. Boyle is considered the exclusive street department foreman, I mean, it's undisputed. He was the only employee performing street department foreman duties that entire time. So at that point, being that they assigned Mr. Boyle to the vacancy that Mr. Crowe voluntarily left his job in 2005, that job was Mr. Boyle's. It is our contention that that job was Mr. Boyle's of the street department foreman, even though they had a paperwork error. Now, that paperwork error and correcting a paperwork error that has existed since 2001, 2001, he had not been performing heavy equipment operator duties. How is that so disruptive to the business operation to deny somebody a reasonable accommodation? A little more than a paperwork error, though. When you've got Crowe there getting the salary of the foreman and your client's getting the salary of a heavy machinery operator, he may be doing other things, but that's a little more than a paperwork error. It's unjust. I mean, the problem is they never, never, for whatever reason, maybe Martin knew that the mayor and city council wouldn't approve this arrangement he had made, and so your client benefited from it until he didn't when there was a new boss that said we're going to follow, you know, the technical rules here. Well, I would say that Pell City benefited from the exemplary services of Mr. Boyle in that position where his good performance is undisputed. He needed no accommodation in that foreman job, but that was removed. He also applied for a maintenance superintendent position that he was denied, and the defendant failed to even look at any other reasonable accommodation for Mr. Boyle. All right. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Alfred Perkins, and Breanna Young and I represent the city of Pell City, Alabama. Pell City, Alabama created a little bit of a mess here, didn't they? Well, I think you've kind of put your finger on the issue here. What they actually did benefited Mr. Boyle. Mr. Martin, out of the goodness of his heart or friendship or for whatever reason, he decided not to get rid of a man who could no longer physically do his job. He's a heavy equipment operator, and there can be no dispute that an essential function of a heavy equipment… But he was doing a job as a foreman. Sir? He was doing a job as a foreman. Because he couldn't do the heavy equipment operator job that he was hired to do. When he was hired in 2000, his only title with the city for the entirety of his employment with the city was heavy equipment operator. He falls, he hurts his back, there's no dispute about that. When he comes back to work, he can't operate heavy equipment, which is an essential function of the heavy equipment operator job. So what the city does is first put him in an office with the utilities clerk to let him help her with paperwork. And then they put him in the shop office to do paperwork there. And then in 2005, Mr. Martin decides, hey, well, let's let him do the functions of the foreman position. Now, what Mr. Martin knows and what Mr. Boyle knows is that Mr. Martin can't promote him. What Mr. Martin knows and Mr. Boyle knows is Judy Tipton can't promote him, the personnel person. The city policy says a promotion is defined as a permanent assignment of an eligible and qualified employee to a position in a higher grade than his or her current grade and accompanied increase in salary. It must be in writing. It must be signed by the department head. And it must be signed by the mayor. It is undisputed in this case. So this is maybe the missing piece of the puzzle, and the record may not show. But for some reason, the obvious thing for Martin to do would be go to the mayor, do what you need to do, make him foreman, put Crow wherever you put Crow. That wasn't done, which suggests to me maybe the record doesn't show they didn't think the mayor would agree to that arrangement. Is that what's going on? I don't know if that's what they thought. I mean, why wouldn't why wouldn't he just make clean up the whole paperwork on this? Well, see, it's not just the paperwork error. I know it's not an error, but why wouldn't he just say, you know, you're the new foreman, and Crow, you're in the Well, I suppose one of the reasons might be that Crow wasn't going to give up $7 an hour. Right. Certainly. That could be a reason. What we do know for sure, because Mr. Boyle testified to this in his deposition, that he never met with the mayor about becoming the foreman. So there's no dispute that the mayor never, ever approved of this circumstance, never officially promoted him to this position, and that he retained the heavy equipment Whose obligation was it to renegotiate the salary? If Mr. Boyle My understanding is that during the time he was the acting foreman, they could have, but didn't renegotiate anything. Correct. So if Mr. Boyle believes he needs to have an adjustment in his salary, he should go and make sure that happens or be told no or whatever. But we don't have any evidence in the record that the mayor, whether Mr. Martin brought it to him or not, there's no evidence in the record that the mayor ever said Officially make him the foreman. And I think it's very significant with Judge Cronin, as you noted earlier, is this situation benefited Boyle. Otherwise, he could have been fired in 2001. In fact, if he decided, if Mr. Boyle decided to file this lawsuit in 2005, he could not have forced any court to put him as an acting foreman at that time, because that would have been a promotion for him. And as this court has held on numerous occasions, the ADA nor the Rehabilitation Act requires an employer to promote a disabled employee in order to accommodate them. Because they would have been supplanting Mr. Crow, who maybe didn't like the job, but no reason to fire Mr. Crow just because somebody else had a handicap. And there's actually no testimony from Mr. Crow that he didn't like his job and didn't want his job. He still had the foreman's job. He was never reassigned officially or demoted, so to speak, to any other job. Since 2001, when he became the foreman, he retained that title. He retained that pay. What happened was Mr. Martin wanted to accommodate Mr. Boyle. And this is exactly the situation that this court has spoken to in prior cases. This is a Lucas case where this court said that the city did more than the law required. Good deeds ought not be punished, and an employer who goes beyond the demands of the law to help a disabled employee incurs no legal obligation to continue to do so. And similarly, in the Terrell case, this court held that an employer that bends over backwards to accommodate a disabled worker must not be punished for its generosity by being deemed to have conceded the reasonableness of so far reaching an accommodation. You're opposing, I guess it kind of comes down to what he was. And clearly, if he's a heavy machinery operator, they're not making him do his duties. I agree with everything you said. I think your opposing counsel's argument is that constructively, we should construe him to be foreman, even though technically he wasn't. And that he essentially was fired from being foreman. Now, I don't know that she can tie that he was fired from being foreman based on a disability versus, you know, it was a mess as far as the titles and all that. But your argument is that even though he's performing the foreman duties, he's not the foreman because that's not what he's really listed as on the payroll. Is that your argument? Yes. And not only is that my argument, that's the allegation in the complaint, that he could not do the heavy equipment operator job. And so Mike Martin accommodated him by allowing him to do the foreman duties. So I don't see how that can be a dispute when that's the allegation in the complaint. And the other problem here, you mentioned this was a unique fact situation. The other problem here is the timing, the sequence of how this happened. He was acting as a foreman, and he heard a rumor from one person, a co-worker, who told him, who allegedly told him, that if Greg Gossett gets the superintendent job, he's going to fire you. Now, this happened in early June. Mr. Boyle testified that he decided between June 6 and June 8, 2012, to apply for disability retirement. And in fact, on June 8, Mr. Martin wrote a letter on his behalf in support of his application for disability retirement, explaining all the ways he could not do the job of the heavy equipment operator. He couldn't stand for more than a few minutes. He couldn't sit for more than a few minutes. In other words, in that application, he was operating on the assumption that's what he was, a heavy equipment operator. Absolutely, because that's the job title that's on the application, the application that he signed under oath. And on June 13, he got his doctor to certify, as a part of this application, that he was permanently disabled and that there were no reasonable accommodations that would allow him to perform this job because he had a chronic back pain issue. He adopted that statement under oath and sent it to the Retirement Systems of Alabama in an effort to get disability retirement. He did this while Mike Martin was still his superintendent. He did this before the city ever posted the opening for the new street superintendent. He did this before Greg Gossett ever applied for the position. And Greg Gossett testified because he was a sitting councilman that he needed to check with the ethics board to see if he can even apply for this position. And all of that had to take place before he ever applied. And then the decision to hire him wasn't until July the 2nd. But the disability application was June the 14th. And for Mr. Boyle now to say that he was forced to apply for disability retirement because of something Greg Gossett did after he became the superintendent, it just doesn't work. Because the decision had already been made before he became superintendent. And that's the other part of this case that I just don't see how plaintiffs can get around. Because they're claiming that he was forced by what Greg Gossett did, asking him to do inventory, on one day asking him to operate a heavy equipment. They're saying that is what forced him to seek retirement. And the timeline just doesn't add up. The bigger problem is he's made representations to the retirement systems of Alabama, not only that he's permanently disabled, but that there are no reasonable accommodations to allow him to do his job. And now he's coming into court saying, I can do my job. And I want my job back. So he's got conflicting representations. This is a situation that the Supreme Court addressed in the Cleveland case, where it said a person who had obtained Social Security disability benefits was also bringing an ADA claim. And the defendants in that case wanted the court to say that just because she has the disability benefits, that precludes her from even bringing the ADA claim. Well, the Supreme Court said, no, it doesn't necessarily preclude her. Because there could be a small little window where what she told the Social Security Administration about not being able to work versus what she's claiming in the ADA case about there being no reasonable accommodations, that they could coexist. We don't have that circumstance in this case. Because unlike the Social Security Administration, who does not consider whether there are any reasonable accommodations that would allow an applicant to work, the retirement system of Alabama does consider that. That's one of the blanks on the form. And twice, Mr. Boyle had a doctor fill in that form and say, not only is he permanently disabled, but there are no reasonable accommodations that would allow him to perform his job and be a heavy equipment operator. In addition to that, every year since he's been approved for retirement disability benefits, he's had to submit another doctor certification. So in 2013, in 2014, about a month after he filed this complaint, and again in 2015, he submitted to the Retirement Systems of Alabama forms from a doctor that said he remains permanently disabled and that there are no reasonable accommodations to allow him to be a heavy equipment operator. That means, by law, he is not qualified to be a heavy equipment operator. And he could have been let go in 2001 when he got hurt and after he came back and couldn't do the job. The city, or Mr. Martin, for whatever reason, like them friends or whatever, did him a favor. Allowed him to continue working up through 2012, even though the city didn't have to do that. Because it's clear that you don't bump an employee from his position. It's clear that you don't have an obligation to put an employee in a position that's not vacant. It's clear that you don't have to promote someone to accommodate them for their disability. And so for all those reasons, staying in that position as acting foreman is not reasonable. And it matters not that he had done it for seven years. That's the situation that this court faced in the whole Brookview City of Alpharetta case. Where a detective had vision issues and the police department allowed him to try to keep him in the office doing investigations that he could do by phone. And if he had to go out, then they had another detective that had to come in and take him out. And if he was on call, literally another detective had to be on call because he couldn't drive. And there are certain things on the scene that he couldn't do. And so the city accommodated him for a while by providing that. They got a new police chief and a new superintendent. And they said, hey, we don't have to do this, and we're not doing this. And this court said that was OK. Another very significant point is in the Alpharetta case, in the Holbrook case, the detective ultimately resigned after he was awarded a scholarship to go to the University of Georgia and take advantage of rehabilitation education benefits. In this case, Mr. Boyle decided to separate from employment, he says, effective October 1st, because he got approved for disability benefits. So that breaks the chain that anything Mr. Gossett did could have caused him to leave when he got disability benefits, which is why he left. And because nothing Mr. Gossett did happened before he applied for those disability benefits. So for those reasons, we believe that this court should affirm the trial court's order, which granted summary judgment in favor of the city, because Mr. Boyle was not qualified for the position that he held, which was heavy equipment operator. And he could not show that there was a reasonable accommodation available that would allow him to continue or to fulfill the essential functions of his position. Thank you. Ms. Edwards. Your Honors, under Cleveland, the Supreme Court recognized that there are too many situations where a previous application for SSDI and a later claim that you are a qualified individual with a disability can comfortably coexist, and this is one of those cases. The city should have wanted to accommodate Mr. Boyle. He was a hard worker. He performed well. He had a good history of work performance. The city wants to argue, oh, it was just Mr. Martin being a nice guy. Well, the city has the duty at law to provide a reasonable accommodation, and its failure to do so, it must show undue burden. Now, I'm hearing of paperwork errors, and I'm hearing this and that, but I don't see undue burden, either with allowing Mr. Boyle to remain in the foreman position that he performed with exceptional performance for over seven years or helping him identify another reasonable accommodation. A burden, and it would certainly be a burden on Mr. Crowe, would be if you've got guys who understandably says this is crazy. We've got to get this thing straightened out. Who's doing what? If he wants to straighten it out and do what you want him to do to say, okay, your client, Mr. Martin, you're now the foreman, something's got to happen with Crowe, and they don't have enough money to pay two foremen, so suddenly Crowe loses seven bucks an hour, and, I mean, isn't that somewhat a burden on not Crowe, but also them because they were doing your client a favor to now have to deprive this other employee of the income he expected to gain? There is no evidence in the record that the city couldn't afford to pay both employees the foreman pay if they had wanted to. It was their prerogative to continue paying Mr. Crowe the foreman rate, despite the fact that he was performing as a mechanic. Obviously, they decided for years they only wanted to pay the one salary, or they would have gone to the mayor and said, we'd like to pay Martin $7 more an hour. They just should have corrected the job titles and the pay, in my opinion, back in 2005. But then you got them firing Crowe. Did Mr. Crowe do anything wrong? Well, no one said anything about firing Mr. Crowe, Your Honor. He wanted to go back to being a mechanic. He wanted to keep his pay, though, and, I mean, the city has the right to set its budget, and just because this scenario has arisen with your client, the city doesn't suddenly have to have two foremen and pay two people for one job. Well, you know, Mr. Boyle testified he would have continued working in that foreman position at the heavy equipment operator pay just to keep from losing his retirement. He testified to that, and he would have. Now, the mayor knew the entire seven years that Mr. Boyle was in that position. He dealt with him regularly. So it's disingenuous for the city to argue that no one knew about this paperwork here during the seven years. They allowed it to go on. Well, does the record show that the mayor, and the mayor may have known that your client was functioning as foreman. Did he know that he was not listed on the paperwork as foreman? Did the mayor go back and check everybody's employment and personnel records? Mr. Martin testified that he went to both the mayor and Judy Tipton, the director of human resources, in an attempt to correct the pay. The director of human resources knew. She's the one who executed the contract to put him in the position in 2005. So the city was on notice of the discrepancy and failed to correct it to their benefit. The mayor never approved it. Excuse me, Your Honor? Apparently, the mayor never signed off on it. Well, no, but Judy Tipton testified that she was their right-hand woman. She had been with that city for decades and handled things before they ever reached the mayor's desk, and that evidence is in the record. Did she have the ability to make a contract for the city? Well, whether she did or not, she signed this agreement to transfer him to that position. Did she have the authority to make a contract for the city? I'm not sure, Your Honor, if she did or not. Okay. The opposing counsel just read the provision that said the mayor had to sign it. Well, what is important here is Mr. Martin had the authority to transfer employees in his position as street department superintendent. On a temporary reassignment. Well, that's why he drafted the contract, because he knew it was not in compliance with the city's temporary assignment policy. The city only allows people to be misclassified under their policies for 180 days before giving them the corresponding pay to that job. And Mr. Martin knew, well, we're going to put Mr. Boyle in this position for two years to see how he does as an accommodation. Then we need to look at renegotiating his pay if he's doing well. He knew that that was outside that 180 days. And that's why he asked the director of human resources to sign that contract with him in 2005 to make that assignment. The issue here, Your Honors, is the city failed to show undue burden in providing a reasonable accommodation as they're required to do under the ADA. All right. Thank you very much. Appreciate your argument. We'll be in recess. All rise.